**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

KAREN THOMAS,                    :
                                                          Case No. 3:08-cv-253
        Plaintiff,

                                                          District Judge Walter Herbert Rice
                                                         Magistrate Judge Michael R. Merz
  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
        Defendant.              :

---

## REPORT AND RECOMMENDATIONS

---

        Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

        Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on June 25, 2004, alleging disability from October 20, 2003. (Tr. 61; 431). Plaintiff's applications were denied initially and on reconsideration. (Tr. 36, 41, 435, 439). A hearing and a supplemental hearing were held before Administrative Law Judge Daniel Shell, (Tr. 449-62; 463-91), who determined that Plaintiff is not disabled. (Tr. 12-29). The Appeals Council denied Plaintiff's request for review, (Tr. 5-7), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shell found that she has severe degenerative abnormality of the lumbosacral spine, history of carpal tunnel syndrome with residual effects of bilateral corrective surgery, anxiety-related disorder, and depressive disorder, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 28, finding 3). Judge Shell also found that Plaintiff has the residual functional capacity to perform a limited range of medium work. *Id.*, finding 5. Judge Shell then found that Plaintiff is capable of performing her past relevant work as housekeeping cleaner or policy checker. *Id.*, finding 7. Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 29).

In her Statement of Errors, Plaintiff challenges the Commissioner's findings only with respect to her alleged mental impairment. (Doc. 9). Therefore, the Court will focus its review on the mental health evidence of record.

In July, 2003, Plaintiff reported to her treating physician, Dr. Uddin, that she was having anxiety attacks at the rate of about two to three per day. (Tr. 177). Over time, Dr. Uddin

4

treated Plaintiff's anxiety with medications. *See, e.g.,* Tr. 166-76. On September 3, 2003, Plaintiff sought emergency room treatment for a panic attack. (Tr. 276-78). Subsequently, Dr. Uddin increased Plaintiff's anxiety medication. (Tr. 171).

Examining psychologist Dr. Tanley reported on September 28, 2004, that Plaintiff graduated from high school, was generally cooperative, demonstrated no eccentricities of manner, impulsivity, or compulsivity, and that she did not exaggerate her symptoms. (Tr. 119-21). Dr. Tanley also reported that Plaintiff's speech and though processes were normal, her affect was largely appropriate, her psychomotor activity was within acceptable limits, that she alleged that she had panic attacks three to four times a week, and that there was no evidence of a formal thought disorder or a psychotic perceptual disturbance. *Id.* Dr. Tanley noted that Plaintiff was alert and oriented, had sufficient judgment to make life decisions, was obese, and that her diagnoses were depressive disorder NOS and panic disorder without agoraphobia and he assigned Plaintiff a GAF of 60. *Id.* Dr. Tanley opined that Plaintiff's ability to relate to others was unimpaired, that she was able to understand and follow simple instructions and maintain attention to perform simple repetitive tasks within the context of low average intelligence range, and that her ability to withstand the stress and pressure of daily work was moderately impaired. *Id.*

Plaintiff began receiving mental health treatment at Mental Health Services for Clark County in October, 2004. (Tr. 159-61). At the time she was initially evaluated by a counselor at that facility, it was noted that Plaintiff's behavior was appropriate to mood, she was oriented, her mood was sad, her affect appeared to be flat, and that she did not have any difficulty with thought processes. *Id.* It was also noted that Plaintiff reported thoughts of suicide with no plan, she was intelligent and motivated, she presented with symptoms of anxiety and depression, and that her

5

diagnoses were anxiety disorder without agoraphobia and major depressive disorder single episode and she was assigned a GAF of 50. *Id.* Plaintiff subsequently received mental health counseling with a therapist at the Clark County facility during the period October, 2004, through March 9, 2007. (Tr. 155-58; 299-327; 424-30).

Psychiatrist Dr. Yakhmi of the Clark County facility reported in February, 2005, that Plaintiff's diagnoses were depression, recurrent, and possible bipolar disorder, that she had crying spells, mood swings, decreased stress tolerance, her symptoms had existed for over one year and were ongoing, and that Plaintiff had a limited response to treatment. (Tr. 196-97). Dr. Yakhmi also reported that Plaintiff was unable to tolerate the stress of work and was unable to work. *Id.*

Plaintiff continued to receive treatment from Dr. Yakhmi and her counselor and on May 15, 2007, Dr. Yakhmi reported that Plaintiff experienced anhedonia, sleep disturbances, feelings of guilt or worthlessness, difficulty concentrating, and hallucinations, delusions, or paranoid thinking. (Tr. 416-23). Dr. Yakhmi also reported that Plaintiff had moderate restrictions of activities, moderate difficulties in maintaining social functioning, marked deficiencies of concentration, and that she experienced three episodes of decompensation. *Id.*

In her Statement of Issues, Plaintiff alleges that the Commissioner erred by rejecting Dr. Yakhmi's opinion and by improperly evaluating the reviewing and consulting psychologists' opinions. (Doc. 9). Essentially, then, Plaintiff challenges the manner in which the Commissioner weighted the evidence.

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. §

404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

In rejecting Dr. Yakhmi's opinion, Judge Shell first recognized that Dr. Yakhmi was Plaintiff's treating psychiatrist and that there are times when a treating physician's opinion is entitled to controlling or, at times, great weight. (Tr. 19-22). Judge Shell then rejected Dr. Yakhmi's opinion on the bases that it is not supported by his clinical notes and is inconsistent with other evidence of record. *Id.*

First, a review of Dr. Yakhmi's clinical records, which number seven pages and which cover the period November 28, 2005, to May 15, 2007, reveals that during that 18-month period, Dr. Yakhmi treated Plaintiff on about fourteen occasions. (Tr. 424-30). In addition, those clinical notes reveal that while Plaintiff alleged experiencing auditory hallucinations, at worst, she was depressed, anxious, and fidgety.[1] *Id.* Further, Dr. Yakhmi noted that Plaintiff's memory was fair, her speech was normal, and her intellectual functioning was average. *Id.* While Dr. Yakhmi's notes are somewhat illegible, they indicate that the primary focus of his treatment was to monitor and prescribe Plaintiff's medications and they do not reflect observations which support Dr. Yakhmi's opinion that Plaintiff had moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning, marked deficiencies of concentration, or that she experienced episodes of decompensation.

Dr. Yakhmi's opinion is also inconsistent with the records from Plaintiff's treating therapist. First, the Court notes that the treatment records from the Clark County Mental Health Services reveals that Plaintiff frequently cancelled her appointments or did not show for appointments. *See, e.g.,* Tr. 299, 300, 301, 304, 307, 312, 324, 310, 326. In addition, over the

---

[1] Even assuming that Dr. Yakhmi did not rely solely on Plaintiff's subjective complaints and allegations that she was experiencing auditory hallucinations, Plaintiff testified at the hearing that she was not longer hearing voices. *See,* Tr. 478

8

eighteen month period of September 18, 2005, to March 9, 2007, Plaintiff attended individual counseling sessions on about 26 occasions. (Tr. 299-327). The frequency of treatment does not support a conclusion of a severely limited individual. In any event, the notes from those sessions reveal that the at times Plaintiff was tearful, feeling sad, depressed due to her upcoming divorce, frustrated over the divorce process, agitated due to household stress, agitated due to conflict with her father and how it erupted into physical violence with her boyfriend, and depressed about the holidays. *Id.* However, those treatment notes do not contain any objective clinical findings that would indicate that Plaintiff experiences symptoms of a disabling nature as Dr. Yakhmi described.

Further, Dr. Yakhmi's opinion is inconsistent with other evidence of record. For example, Plaintiff has been treated conservatively with counseling and medications. In addition, Plaintiff has never required psychiatric hospitalization or even emergency room care. Moreover, Dr. Tanley reported that Plaintiff was alert and oriented, demonstrated no eccentricities of manner, impulsivity, or compulsivity, that Plaintiff's speech and though processes were normal, her affect was largely appropriate, her psychomotor activity was within acceptable limits, and that there was no evidence of a formal thought disorder or a psychotic perceptual disturbance, and he assigned Plaintiff a GAF of 60 indicating, at worst, moderate difficulties. Finally, Dr. Yakhmi's opinion is inconsistent with the reviewing mental health experts' opinions. See Tr. 122-39.

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Yakhmi's opinion.

Plaintiff argues next that the Commissioner erred by improperly evaluating the opinions of the examining and reviewing mental health experts. Plaintiff essentially alleges that Judge Shell failed to evaluate those opinions in accordance with the Regulations. However, contrary

9

to Plaintiff's argument, Judge Shell recognized the relationships between Plaintiff and the examining and reviewing experts; that is, that they are not treating sources. (Tr. 18-22). In addition, Judge Shell specifically reviewed and analyzed the examining and reviewing sources' findings and opinions. *Id.*

Finally, Plaintiff argues that the Commissioner erred by failing to limit her to simple tasks which would be consistent with the examining and reviewing experts' opinions. However, neither the examining or the reviewing experts opined that Plaintiff is limited to simple tasks. Rather, as noted above, Dr. Tanley opined that Plaintiff's ability to perform simple tasks is unimpaired. Similarly, the reviewing experts opined that Plaintiff is not impaired in her abilities to understand and remember very short and simple instructions and not significantly impaired in her ability to understand and remember detailed instructions. None of these opinions require a *limitation* to simple tasks.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

May 15, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).